UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
COLLEEN McAVEY,

                              Plaintiff,        07-CIV-11181 (SCR)

          -against-

ORANGE-ULSTER BOCES, JEFFREY        **DECLARATION IN**
SMITH, former Deputy Superintendent, JAKE   **SUPPORT OF MOTION**
McHALE, Principal of Flannery High School,     **PURSUANT TO FRCP**
and MARGUERITE FLOOD, Executive          **12(b)(6) TO DISMISS**
Director for Personnel, sued in their individual   **COMPLAINT**
capacities,

                             Defendants.
------------------------------------------------------------X

      SHARON N. BERLIN, an attorney at law admitted to practice in the State of New York and a member of the Bar of the United States District Court for the Southern District of New York, declares under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

      1.     I am a member of the firm of LAMB & BARNOSKY, LLP, attorneys of record for defendants ORANGE-ULSTER BOCES ("BOCES"), JAKE McHALE ("McHale") and MARGUERITE FLOOD ("Flood") (collectively "defendants") in this action.

      2.     This declaration is submitted in support of a motion by defendants for an order pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP") dismissing the complaint of plaintiff COLEEN McAVEY ("plaintiff")

for failure to state a claim upon which relief can be granted. Annexed hereto as Exhibit A is a true and complete copy of plaintiff's complaint in this action.

3.    Plaintiff alleges a claim of retaliation under 42 U.S.C. § 1983 based upon her speech. As is demonstrated in the memorandum of law submitted herewith, even if plaintiff's complaint is viewed in the light most favorable to her, and the allegations therein are presumed to be true, the fact remains that any statements which she allegedly made and any conduct in which she allegedly engaged was within the course of her official duties as a publicly-employed high school social worker and, therefore, not entitled to First Amendment protection.

4.    Accordingly, plaintiff's complaint fails to state a claim upon which relief can be granted and must be dismissed pursuant to FRCP 12(b)(6).

WHEREFORE, it is respectfully submitted that this Court should issue an order dismissing plaintiff's complaint in its entirety as against the defendants in this action pursuant to FRCP 12(b)(6), and granting such other and further relief as it may deem to be just and proper.

Dated:    Melville, New York
          January 10, 2008

                                                */s/ Sharon Berlin*
                                                SHARON N. BERLIN (SNB 6480)

#201785 v3Final

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
COLLEEN MCAVEY,

               Plaintiff,

-against-                            **COMPLAINT**

ORANGE-ULSTER BOCES, JEFFREY SMITH,     **JURY TRIAL DEMANDED**
former Deputy Superintendent, JAKE MCHALE,
Principal of Flannery High School, MARGUERITE    ECF Case
FLOOD, Executive Director for Personnel,
sued in their individual capacities,

               Defendants.
------------------------------------------------------------X

    By and through her counsel, Sussman & Watkins, plaintiff complains of defendants as follows:

    I.    **INTRODUCTION**

    1. Plaintiff Colleen McAvey brings suit to redress the violation of her rights under the First Amendment of the United States Constitution.

    II.    **PARTIES**

    2. Plaintiff resides in the County of Orange, State of New York, within this judicial district.

    3. Defendant Orange-Ulster BOCES is organized pursuant to the laws of the State of New York. It may sue and be sued.

    4. Defendant Jeffrey Smith served as Deputy Superintendent of Orange-Ulster BOCES during the relevant time. He is sued in his individual capacity for actions taken under color of state law.

    5. Defendant Jake McHale served as principal of the Flannery High School during the

relevant time. He is sued in his individual capacity for actions taken under color of state law.

5. Defendant Marguerite Flood served as Executive Director of Personnel during the relevant time. She is sued in her individual capacity for actions taken under color of state law.

## II.   JURISDICTION

6. This Honorable Court has jurisdiction over this action pursuant to 28 U.S.C. secs. 1331, 1343 (3) and (4) and 1367 and 42 U.S.C. secs 1983 and 1988.

## III.   FACTUAL AVERMENTS

7. Plaintiff, Colleen McAvey, has a Master's Degree in Social Work from Fordham University. She has been employed as a social worker by Orange-Ulster BOCES for eleven years.

8. In Fall 2005, plaintiff was working as a social worker at Flannery High School.

9. On or about September 8, 2005, two female students (E. and C.) from Ms. A.'s ninth grade Special Education English class reported to Flannery Principal Jake McHale that Ms. A. had been making inappropriate comments to D., a 14 year-old boy in their class. The girls reported that Ms. A. had made the following comments to D: that she liked the sound of his voice; that she knew where he lived and would pick him up to take him to church; when D.'s pants slid down and he lifted them up, Ms. A. said, "Mmmm, too bad I'm too old to look." According to the girls, Ms. A. talked "sexy" to D. and repeatedly told him that she knew where he lived and would come pick him up. According to the girls, a few days earlier, Ms. A. yelled to D. as he was getting on his school bus that she was going to pick him on Sunday and take him to church. According to the girls, Principal McHale told them he would "take care of it."

10. On or about September 9, 2005, these same two girls (E. and C.) spoke with plaintiff

2

and reported to her the same observations about Ms. A.'s behavior they had reported to McHale the previous day. Plaintiff then met with D. and asked him how his summer had been and how he liked High School. After a series of short responses, D. asked plaintiff if she could get him out of his English class. He said that he thought his teacher, Ms. A., wanted to have sex with him. He then described the same type of comments and behaviors as E. and C.: Ms. A. told D. she liked the sound of his voice and kept telling him that she lived near him and would come pick him up to take him to church. He also reported that when he lifted up his pants, she said, "Mmmm, too bad I'm too old to look." D. told plaintiff that the other boys teased him about Ms. A.'s suggestive comments and that the girls thought he was a "freak." He implored plaintiff to "get me out of that room." Plaintiff told D. that she would speak with Principal McHale and follow up with D.

11. Plaintiff next spoke with Ms. Sorice, D.'s homeroom teacher, and told her that three students had raised a concern about Ms. A. and that she had to speak with Principal McHale. Ms. Sorice asked plaintiff if it was about Ms. A.'s comments to D. She told plaintiff that the kids were all talking about it, and that she herself had heard Ms. A. tell D. that she was going to pick him up from his house and take him to church as he was getting on his school bus. Ms. Sorice advised plaintiff that she had already informed Principal McHale, and Assistant Principal Nancy Tambini-Wall, about her concerns.

12. Plaintiff then spoke with McHale and reported the foregoing to him. He told plaintiff that E. and C. had already reported the same information and that he would take care of it on Monday (September 12, 2005).

13. On September 12, 2005, plaintiff informed School Resource Officer David Ramsey

3

(a Town of Goshen police officer) her concerns about Ms. A.'s comments toward D., which appeared to be sexual in nature. She asked Ramsey if he needed to be involved in the situation. Ramsey at first stated that he thought he should be involved, but then told plaintiff that it was Marguerite Flood's responsibility, as the BOCES personnel director.

14. On September 12, D. appeared in plaintiff's office and told her that he could not go to Art class because it was in Ms. A's classroom and he was afraid she would come in the room. When plaintiff informed McHale of D's concerns, McHale told her to take D. to the Alernative Learning Class ("ALC"). Plaintiff escorted D. to the ALC and informed the instructor, Ms. Farganis, that McHale wanted D. there while he was looking into a situation involving D. Plaintiff referred Farganis to McHale when Farganis asked for details.

15. Thereafter, still on September 12, plaintiff heard McHale speak with Farganis, Officer Ramsey and another teacher about Ms. A.'s reported comments toward D., including her comments about going to his house and taking him to church and her statement "Too bad I'm too old to look" when D.'s pants slid down.

16. Also on September 12, plaintiff observed Ramsey question D with Ms. Farganis present. Later that day, plaintiff spoke again with D., who reiterated his concerns about going back into Ms. A.'s classroom. She assured him that they were addressing the situation. He confirmed that he had spoken with Officer Ramsey and Ms. Farganis about his concerns regarding Ms. A.

17. Over the next few days, D. repeatedly told plaintiff that he could not go back to Ms. A.'s class, and that he feared she was now angry with him for "telling on her." Plaintiff reported D's concerns to McHale.

4

18. On September 15, D. banged on plaintiff's office door and was visibly upset. He told plaintiff that Ms. A. had refused to allow him to go to the bathroom and had written him up for doing so without permission. Plaintiff met with D. and Ms. A., who insisted that plaintiff had left her class without seeking permission. She stated that McHale had mandated that D. return to her classroom. Plaintiff then suggested that they meet with McHale.

19. When they met with McHale, he reprimanded D. for ignoring rules and indicated that there was nothing to his concerns about Ms. A. McHale told D. he was being manipulative, and that he was mandated to return to Ms. A.'s class.

20. On that same day, September 15, 2005, McHale angrily entered plaintiff's office and asked if she had called D's father about the situation with Ms. A. Plaintiff told him that she had not. McHale stated the father had called the *Times Herald Record* newspaper and reported that the school was covering up sexual abuse.

21. On or about September 19, 2005, Officer Ramsey approached plaintiff and told her he needed to question her about allegations concerning Ms. A. and D. Plaintiff reminded Ramsey that she had already told him what she knew about the situation several days earlier. He denied that they had their previous conversation.

22. On or about September 20, 2005, a *Times Herald Record* reporter, Dianna Cahn, called plaintiff and asked for her comment about a Town of Goshen police report she had obtained concerning Ms. A. and student D. When plaintiff said she did not know about the report, Cahn read it aloud to plaintiff.

23. The report, filed by Officer Ramsey, was false in a number of important respects. In his report, Ramsey falsely stated that he first learned of any allegations of sexual harassment by

5

Ms. A. when he was contacted by reporter Cahn on September 15, 2005. He further stated, falsely, that plaintiff had not informed him of Ms. A.'s suggestive comments to D. before he purportedly questioned her on September 16, 2005. Ramsey's report portrayed plaintiff as falsely claiming that she reported to him earlier. Ramsey also reported that ALC instructor Farganis told him she had no prior knowledge of the allegations about Ms. A., except that she prayed in class, despite the fact that plaintiff heard McHale tell her the allegations about Ms. A.'s suggestive comments to D.

24. In addition, Ramsey's report recounted an interview with D., in which D apparently stated that he did not believe Ms. A. committed a crime, but did report her comment about it being "too bad I'm too old to look" when his pants slipped down and that she put her hand on his back as he was reading.

25. Ramsey's own terse account of his interview of D. reveals it was coercive. Rather than simply asking D. what concerns, if any, he had about Ms. A., Ramsey began the interview by telling D. "that if in the past he has made statements that were not completely true now would be the time to tell the truth."

26. According to Ramsey's report, he did not interview anyone else, including the two female students (E. and C.) who had initially reported their concerns about Ms. A. to plaintiff and McHale. Nor did he apparently interview Ms. A.

27. Cahn also read to plaintiff a supporting deposition given by Principal McHale. In that deposition, McHale falsely recounted the September 15 conversation among McHale, plaintiff, Ms. A. and D. McHale claimed that D. "amitted [sic] to some manipulation of the truth and that he was playing Ms. Mcavey against Ms. A____." McHale's statement was not true.

6

28. Plaintiff was extremely concerned about Ramsey's report and McHale's deposition. They falsely portrayed her reporting of the underlying allegations regarding Ms. A. and seemed to be covering up the truth about what had occurred to shield themselves and the District from responsibility for their failure to act timely and appropriately under the law.

29. On or about September 21, 2005, plaintiff requested, through the Freedom of Information Law ("FOIL"), that the Goshen Police Department provide her with a copy of the police report which reporter Cahn had read to her.

30. Immediately after plaintiff made her request, Town of Goshen Police Chief Marsh went to Flannery High School and met with Ramsey in McHale's office.

31. On September 22, 2005, in an e-mail, plaintiff advised then BOCES Superintendent, Dr. Robert Hanna, what had transpired until that date.

32. On September 27, plaintiff received a copy of Ramsey's report, but not a copy of McHale's supporting deposition. She advised Chief Marsh of this and requested that she receive McHale's deposition, as it had been given to the newspaper reporter. Marsh responded angrily and told plaintiff to get the paperwork from her school. Plaintiff persisted in asserting her rights under FOIL to Chief Marsh and advised Goshen Town Supervisor, Honey Bernstein, about her concerns regarding her treatment by the Town police and Ramsey's false report.

33. On or about October 7, 2005, McHale left a completed "Confidential Report of Allegation" of "Child Abuse in an Educational Setting" for plaintiff in her mailbox. The form was back-dated September 8, 2005. McHale left a post-it note stating: "Colleen, Please sign and return." The form briefly described D.'s report about Ms. A.

34. Plaintiff advised McHale that she could not sign the form, as it was back-dated.

7

35. On or about October 14, 2005, plaintiff met with Deputy Superintendent Smith, Principal McHale, Personnel Director Flood, and plaintiff's union representative, John Zwick.

36. During this meeting, Smith yelled at plaintiff that she was forbidden from going to the police. He also told her that she was forbidden from speaking with a news reporter. Plaintiff attempted to explain her concerns about the falsity of the police report that had been filed, as well as the fact that she did not initiate contact with the newspaper reporter. However, Smith peremptorily admonished her and, without basis, cast aspersions on her professionalism.

37. Plaintiff subsequently received a letter of admonishment from Smith, dated November 8, 2005, which was also placed in her personnel file. Smith wrote: "My concern however, is about your subsequent involvement with the Goshen Town Police and the Times Herald Record.... I do not believe it is beneficial or appropriate for individual staff members to be involved directly with the police and/or newspapers in instances surrounding student matters. In the future, should these circumstances arise again, I am directing that you stay in process and work directly with your school administrator." Plaintiff did not receive this letter until Thanksgiving weekend.

38. Plaintiff suffered other immediate adverse actions as a result of her activity and speech regarding Ms. A's inappropriate comments and conduct toward D., the District's failure to respond appropriately and the District's cover-up of the entire situation, including through the filing of false police reports.

39. In early Fall 2005, plaintiff expressed interest in a "P.M. Hours" counselor position at Flannery, which would significantly augment her salary. Plaintiff was by far the most qualified for this position based on her credentials and experience. However, she was not even

interviewed for the position and it was given to ALC instructor Farganis.

40. In addition, plaintiff was cut out as a presenter at a District-wide professional conference, also because of her protected speech, as set forth above.

41. McHale treated plaintiff hostilely and allowed others to make derogatory comments about plaintiff without repercussion.

42. In April 2006, plaintiff discovered that her e-mails had been opened and forwarded to Marguerite Flood, in an apparent attempt to obtain negative information against plaintiff.

43. In Summer 2005, plaintiff worked as a summer school counselor. Although she applied for Summer 2006, she was not given a position.

44. The individual defendants — Smith, McHale and Flood — were all personally involved in some or all of the adverse actions outlined above.

45. In or about September 2006, defendant Smith was forced to resign but, upon information and belief, remained on OU Boces' payroll.

46. On or about December 22, 2006, plaintiff was involuntarily transferred. Upon information and belief, McHale and Flood were both personally involved in this adverse action.

47. In addition to past and future lost pay and benefits (diminished pension), plaintiff has suffered physical and emotional distress, including high blood pressure, heart palpitations, anxiety, and feelings of depression as a result of defendants' and malicious and/or wanton actions.

48. The violation of plaintiff's First Amendment rights was proximately caused by a policy or custom of Orange-Ulster BOCES of retaliation and/or through the acts and/or omissions of those delegated with final policymaking authority with respect to plaintiff's

employment.

## IV. CAUSES OF ACTION

49. Plaintiff incorporates paras. 1-48 as if fully restated herein.

50. By dint of the foregoing, defendants violated plaintiff's First Amendment rights by retaliating against her for her protected speech and activity which involved matters of public concern.

## V. PRAYER FOR RELIEF

51. WHEREFORE, plaintiff prays that this Honorable Court:

(a) empanel a jury to hear and decide this matter;

(b) award to plaintiff compensatory damages, including damages for lost pay and benefits and past and future emotional and physical distress, against the defendants jointly and severally;

© award to plaintiff punitive damages against the individual defendants for their egregious violations of plaintiff's rights which must be punished and/or deterred;

(d) award to plaintiff reasonable attorneys' fees and costs pursuant to 42 U.S.C. section 1988, and

(e) enter any other relief justified by the law and facts.

Dated: December 11, 2007
      Chester, New York

Respectfully submitted,

S/_____
Christopher D. Watkins (CW 2240)
SUSSMAN & WATKINS
40 Park Place – PO Box 1005
Goshen, NY 10924
(845) 294-3991
Attorneys for Plaintiff